**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 96-31281
_____

MOSES COOPER &
LOUISE COOPER,

Plaintiff-Appellant,

versus

WAL-MART STORES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Middle District of Louisiana
(No. 95-811)
_____

June 11, 1998

Before WIENER, EMILIO M. GARZA,[*] and BENAVIDES, Circuit Judges.

PER CURIAM:[**]

Plaintiffs-Appellants Moses Cooper and Louise B. Cooper, husband and wife (the Coopers), appeal the district court's grant of judgment as a matter of law (j.m.l.) in favor of Defendant-Appellee Wal-Mart Stores, Inc. (Wal-Mart) on their personal injury claims. The Coopers brought suit after Mr. Cooper tripped while

---

[*] Concurring in the judgment only.

[**] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

passing through an exit aisle occupied by a Wal-Mart employee who was purchasing a bicycle. Claiming that the employee pushed the bicycle in Mr. Cooper's path, causing him to fall and sustain injuries, the Coopers sought to hold Wal-Mart (a) vicariously liable for the employee's negligence and (b) independently liable for its own negligence. At the close of the Coopers' case, Wal-Mart orally moved for j.m.l. on the ground that the employee's actions in purchasing the bicycle were not taken in the course and scope of her employment; consequently, the Coopers had not made out a case of respondeat superior as a matter of law. The court granted the motion and the Coopers took this appeal from the district court's order dismissing their claims with prejudice. They contend that the magistrate judge (a) misapplied Louisiana law, and (b) improperly weighed the evidence adduced at trial. The Coopers also contend that the court erred in dismissing their direct negligence claim against Wal-Mart as it did not move for j.m.l. on that claim. Finding no merit in the Coopers' position, we affirm.

I

FACTS AND PROCEEDINGS

The Coopers went to the Wal-Mart pharmacy to purchase insulin for Mr. Cooper's diabetic condition. Realizing that they did not have enough money to pay for the medicine, they attempted to leave the store through an aisle between the customer service desk and a cash register. Mrs. Cooper testified that two customers were

2

standing at the cash register waiting to "check out" and two Wal-Mart employees were standing at the service desk. One of the employees, Emma Deggs, was purchasing a small bicycle for her daughter. The other employee, Gloria Germany, was obtaining a "price check" for a customer. According to Mrs. Cooper, Deggs and Germany were engaged in a conversation about the bicycle as the Coopers approached the aisle.

Mrs. Cooper stated that, just as she was passing the register and speaking to Germany about the bicycle, Deggs pushed it into Mr. Cooper's path by "fooling with" some tags on the bike's handlebars. Mr. Cooper, who had been following his wife, tripped and fell over the bike's training wheels, injuring his right knee. The store's assistant manager, David Bayhem, was notified of the accident and helped Mr. Cooper up off the floor. He did not offer to assist the Coopers in obtaining medical treatment. Mrs. Cooper further testified that Deggs picked the bike up and moved it closer to the service desk following the accident.

The Coopers proceeded to a nearby emergency room where a physician examined Mr. Cooper's knee, gave him some pain medication, and recommended that he seek additional treatment from his primary care physician. Mr. Cooper subsequently underwent knee surgery, which required several months of additional treatment and recuperation.

The Coopers filed suit in state court, contending that Wal-Mart was both independently and vicariously liable for Mr. Cooper's

injury.  Wal-Mart removed the case to federal court, predicating federal jurisdiction on diversity of citizenship, and the matter proceeded to trial before a magistrate judge pursuant to the district judge's Order of Reference.  At the close of the Cooper's case, Wal-Mart orally moved for j.m.l. under Rule 50(a) of the Federal Rules of Civil Procedure on the following ground:

> There is no basis . . . for this case to go to the jury on the issue of Wal-Mart's liability on the theory that has been advanced . . . by plaintiff, that is, that an employee in the course and scope of their employment undertook some activity that was negligent that caused the plaintiff harm."

In support of its motion, Wal-Mart argued that Deggs —— the only employee alleged to have been responsible for the accident —— purchased the bicycle during her lunch break, after "clocking out" her time card.  According to Wal-Mart's time clock activity report, Deggs clocked out for lunch at 12:12 p.m. on the day of the incident.  In his accident investigation report, Bayhem determined that Mr. Cooper's fall occurred at 12:20 p.m.  Because Deggs was off duty, urged Wal-Mart, she could not have been acting in the course and scope of her employment when she was purchasing the bike.

The Coopers responded by arguing that Deggs's off-duty status did not preclude a course and scope of employment finding.  Her off-duty status, urged the Coopers, was a function of Wal-Mart's employee discount program.  Wal-Mart requires its employees to clock out before making purchases under the program.  Thus, the

4

fact that Deggs had clocked out did not indicate that she was on a personal errand; she was simply complying with company policy. And, continued the Coopers, because that policy induces employee purchases, which in turn benefits Wal-Mart by increasing its sales, employee action of the type here at issue is taken in furtherance of Wal-Mart's business. Any negligence associated with such action, urged the Coopers, should therefore be attributable to Wal-Mart.

The magistrate judge rejected the Coopers' position and granted the motion, finding that because Deggs had clocked out prior to making her purchase, she was acting in the capacity of a customer rather than as an employee. As such, Wal-Mart could not be held liable under the theory of respondeat superior. The court reasoned that discount-induced employee purchases are not sufficiently intertwined with a Wal-Mart employee's job duties as to be considered in the course and scope of Wal-Mart employment; any benefit Wal-Mart derives from the program is indirect. In fact, Wal-Mart's off-the-clock policy, rather than indicating a connection with employment duties, suggests that employee purchases are to remain distinct from job performance. The Coopers timely appealed.

II

ANALYSIS

A.  STANDARD OF REVIEW

We review a motion for j.m.l. <u>de</u> <u>novo</u>, applying the same legal

standard as did the trial court.[1]  In evaluating such a motion, we view the entire trial record in the light most favorable to the non-movant, and draw all inferences in its favor.[2]  If the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion, we will conclude that the motion should have been granted.[3]  The "decision to grant [j.m.l.] . . . is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury."[4]

B.   EXISTENCE OF MATERIAL FACT ISSUES

The Coopers argue that the magistrate judge improperly made factual findings in entering a judgment against them on their vicarious liability claim.  Specifically, they insist, the court erred in determining that (1) Deggs was the employee that tripped Mr. Cooper, and (2) she was off duty when she purchased the bike. The Coopers contend that the court's finding that Deggs was the employee who tripped Mr. Cooper improperly foreclosed an inquiry into the actions of other employees, which actions could have satisfied the course and scope of employment predicate for Wal-

---

[1]Omnitech Int'l, Inc. v. The Clorox Co., 11 F.3d 1316, 1322-23 (5th Cir. 1994).

[2]Id. at 1323.

[3]Id.

[4]Id. (quoting In re Letterman Bros. Energy Sec. Litig., 799 F.2d 967, 972 (5th Cir.1986)).

6

Mart's vicarious liability.[5]  Likewise, contend the Coopers, the court's determination that Deggs was off duty similarly impeded their ability to establish that the tortious conduct in question occurred in the course and scope of Deggs's Wal-Mart employment.

In support of their contention that a factual dispute over the responsible employee's identity existed at trial, the Coopers invite our attention to evidence that: (1) Deggs disavowed any knowledge of the accident, claiming that she purchased the bike and left the store without incident, (2) Mr. Cooper testified that Germany was the employee at fault, and (3) Bayhem testified that Deggs was not present when he arrived at the accident scene.

With respect to Deggs's on/off-duty status, the Coopers suggest that the time line created by the evidence adduced at trial contradicts Bayhem's 12:20 p.m. estimate of the accident time.  The Coopers derive a contradiction from the facts that (1) emergency room records indicate that the Coopers arrived for treatment at 12:38 p.m. — a "mere" difference of eighteen minutes — and (2) Deggs testified that it took her fifteen minutes to purchase the bike.  From these fact, the Coopers infer that Deggs attempted to purchase the bike before clocking out at 12:12 p.m.  Moreover, note the Coopers, Mrs. Cooper testified that the accident occurred at noon, directly contradicting Bayhem's testimony.

Our review of the record reveals that the Coopers have

_____

[5]See infra notes 8-9 and accompanying text.

advanced these purported evidentiary conflicts disingenuously, "cherry picking" favorable excerpts from witness testimony and at times flatly mischaracterizing the evidence. Indeed, the Coopers have changed their theory of the case on appeal in an apparent hindsight effort to conjure up material questions of fact worthy of a jury's consideration where none exist.

From the outset of their case, the Coopers made it clear that their focus was exclusively on Deggs's conduct. In their opening statement they announced to the jury: "We believe that the evidence will demonstrate clearly that [Deggs], unfortunately, negligently, and carelessly, moved this bicycle into [Mr. Cooper's] passageway [sic] and caused him to fall and get hurt." The Coopers never expressed doubt as to the identity of the responsible employee. And when Wal-Mart's motion for j.m.l. was argued, the Coopers did not attempt to defeat the motion by suggesting that material questions of fact surrounded the identity of the culpable employee so that, as a result, deciding the case as a matter if law would be inappropriate.

But the Coopers now seize on Mr. Cooper's testimony that Germany —— the Wal-Mart employee who was obtaining a price check at the service desk —— was the bike-pushing culprit. It is clear, from Mr. Cooper's remaining testimony, however, that he had forgotten or was otherwise uncertain of the employee's name but at all times believed that the employee purchasing the bike (Deggs)

8

was the party at fault.[6]    Moreover, Mrs. Cooper testified

[6]Mr. Cooper originally testified, albeit with some reservation, that Germany moved the bike into his path:

Q:    All right.  Was the lady — who was handling the — who moved the bicycle?

A:    I believe that was — let me see.  I think that was [Germany].

His subsequent testimony, however, makes it clear that he intended to identify Deggs:

A:    I was going out the store to go get some money, but the lady that were buying the bicycle, when I got close, the bike trying to move back right in front of me.  My feet got tangled up in the back wheel.  I just went on over with it.

* * *

Q:    [On cross-examination:] Mr. Cooper —

A:    Yeah.

Q:    — the lady that had —

A:    The bicycle.

Q:    — the bicycle —

A:    Yeah.

Q:    — as you were walking out —

A:    I was walking out.

Q:    — were you passing in front of her or behind her?

A:    Behind her.

Q:    Okay.  And she had her back to you as you were walking —

A:    Yeah.

Q:    — out, is that fair?

A:    Yeah, and she was fooling with the bicycle taking

9

unequivocally that Deggs was responsible. And, although Deggs denied any involvement in the accident and Bayhem claimed that she was absent from the scene, such testimony merely called the credibility of those witnesses into question rather than creating a fact issue.

Likewise, the Coopers have made the question of Deggs's on-duty status an issue for the first time on appeal. In defending against Wal-Mart's j.m.l. motion in the district court, the Coopers conceded that Deggs was off the clock when the accident occurred but argued that this fact was not dispositive. Furthermore, in lifting snippets of evidence from the record on a heretofore uncontested issue, the Coopers have mischaracterized witness testimony. They claim that Mrs. Cooper testified that the accident took place at 12:00 p.m. when, in reality, the record is clear that she testified that the incident occurred at "<u>about</u> twelve o'clock." As such, her testimony does not contradict Bayhem's 12:20 p.m. estimate.

The Coopers also fail to present in an accurate light Deggs's testimony concerning the amount of time it took her to purchase the bicycle. Although she had previously estimated a fifteen-minute interval, she had done so with the caveat that she could not

something off the bike and the bike went to ——

* * *

10

remember the time frame.  Moreover, she had also previously given a five-to-ten-minute estimate.  At trial, Deggs was asked which estimate was more accurate and she responded that it took her no longer than five to ten minutes to purchase the bike.  In addition, without evidence of the emergency room's location —— and there is none in the record —— no contradictory inferences can be drawn from the eighteen minute interval between the putative 12:20 p.m. accident time and the Coopers' 12:38 p.m. emergency room arrival.

Our review of the <u>entire</u> record leads to the conclusion that no material questions of fact existed with respect to these issues. Our conclusion is bolstered by the Coopers' failure to insist otherwise at trial.

C.   VICARIOUS LIABILITY

The concept of vicarious liability is embodied in article 2320 of Louisiana's Civil Code.[7]  An employer is liable under article 2320 for the tortious conduct of its employees committed in the course and scope of their employment.[8]  The answers to four questions are dispositive: "(1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4)

---

[7]<u>See</u> LA. CIV. CODE ANN. art. 2320 (West 1997) ("Masters and employees are answerable for the damages occasioned by their servants and overseers, in the exercise of the functions in which they are employed.").

[8]<u>Baumeister v. Plunkett</u>, 673 So.2d 994, 996 (La. 1996).

11

whether it occurred during the hours of employment."[9] The <u>course</u> of employment aspect of the inquiry refers to time and place (the third and fourth factors), whereas the <u>scope</u> of employment aspect refers to the employment-related risk of injury (the first and second factors).[10] "A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-the-course of requirement, or vice versa."[11]

In <u>Lebrane</u> — Louisiana's seminal case on vicarious liability — the scope and course of employment test was phrased thusly:

> [Whether] the tortious conduct of the [employee is] so closely connected in time, space, and causation to his employment duties as to be regarded a risk of harm attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests.[12]

In negligence cases, the court need only determine whether the employee's general activities at the time of the tort were within the course and scope of his employment.[13]

---

[9]<u>Id.</u> at 996-97 (citing <u>Lebrane v. Lewis</u>, 292 So.2d 216, 218 (La. 1974)).

[10]<u>Benoit v. Capital Mfg. Co.</u>, 617 So.2d 477, 479 (La. 1993).

[11]<u>Id.</u> (quoting <u>Lisonbee v. Chicago Mill and Lumber Co.</u>, 278 So.2d 5, 7 (La. 1973)).

[12]<u>Lebrane</u>, 292 So.2d at 218.

[13]<u>Ermert v. Hartford Ins. Co.</u>, 559 So.2d 467, 478 (La. 1990).

12

The Coopers argue that the court erred in granting Wal-Mart's motion for j.m.l. by placing undue emphasis on Deggs' off-duty status in the course and scope of employment calculus. According to the Coopers, the court mistakenly believed that all four factors under that rubric must be established to produce vicarious liability.[14] The Coopers urge that, although Deggs's off-duty status weakened the scope of employment showing, the course of employment factors were sufficiently strong to allow the issue to go to the jury. In support of their position, the Coopers cite several cases purported to hold employers vicariously liable for the tortious conduct of off-duty employees.[15]

We disagree with the Coopers' characterization of the magistrate judge's ruling. The court's decision to grant Wal-Mart's motion turned not on the on-duty/off-duty distinction, but on the fact that while Deggs was off duty, she was attending to a purely personal matter while on her lunch break — purchasing a bicycle for her daughter's birthday. Even though the cases relied upon by the Coopers impose vicarious liability for off-duty employee conduct, the conduct in those case was nonetheless actuated, to an appreciable extent, by the purpose of serving the

---

[14]See supra note 11 and accompanying text.

[15]Wattik v. Lewis Grocer Co., 476 So.2d 444 (La. Ct. App. 1995); Dismuke v. Quaynor, 637 So.2d 555 (La. Ct. App. 1994); Johnson v. Gant, 606 So.2d 854 (La. Ct. App. 1992); Guidry v. Freeman, 555 So.2d 588 (La. Ct. App. 1989).

13

employer's business.[16]  As Deggs's motivation was purely personal and entirely extraneous to her service as a Wal-Mart employee, we cannot say that the court erred in finding the scope of employment showing to be so weak as to warrant judgment as a matter of law.[17]

---

[16]See Ermert, 559 So.2d at 477 ("If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service.  So also, the act may be found to be in the service if not only the manner of acting but the act itself is done largely for the servant's purposes.") (citations omitted); Wattik, 476 So.2d at 447 (holding employer vicariously liable for employee's actions in assaulting two brothers parked in a car outside employer's business even though employee clocked himself out before committing the tort, but noting that the altercation which provoked the tort was employment-rooted as it was "reasonably incidental to the performance of the employee's duties of sweeping or blowing off the sidewalk and in requesting the plaintiff's to remove their vehicle out of the fire lane."); Dismuke, 637 So.2d at 561 (finding no clear error in the lower court's determination that a university employee was acting within the scope of his employment when he raped a young girl that was attending camp at the university even though the employee was technically off duty, but noting that the employee was engaged in employment-related activity when the rape occurred); Gant,606 So.2d at 861 (holding employer liable for off-duty policeman employee's conduct in killing a bystander by accidentally discharging his pistol during a telephone call, but noting that "[b]y entering the station, telephoning Ms. Gunn and manipulating his pistol, [the policeman] was engaged to some appreciable extent in law enforcement activity and his motivation was not purely personal[.]"); Guidry, 555 So.2d at 593 (holding employer truck company vicariously liable for the negligent acts of its employee truck driver in injuring a bystander during a basketball game, but noting that "[t]he accident which injured [plaintiff] was job-related . . . .  The basketball activity was intended to solicit customers for [the employer] and to entertain [its] customers and employees while waiting for loads.").

[17]The Coopers also urge that the court failed to follow Ermert by focusing on Deggs's specific activity at the time of Mr. Cooper's accident — purchasing a bicycle — rather than on her general activity — negligently moving merchandise in the exit aisle.  See supra, note 13 and accompanying text.  The Coopers misread Ermert, however, inasmuch as their categorization under the distinction is backwards: Deggs's general activity was the purchase

14

D.  DISMISSAL OF NEGLIGENCE CLAIM

The Coopers argue that, inasmuch as Wal-Mart did not move for j.m.l. on the Coopers' direct negligence claim, the district court erred when it entered judgment as a matter of law on that claim. And even assuming that Wal-Mart moved for the dismissal of their negligence claims, contend the Coopers, judgment as a matter of law was inappropriate because sufficient evidence was adduced from which the jury could have reasonably inferred Wal-Mart's own negligence.  Although the Coopers' theory of Wal-Mart's independent negligence is unclear, they appear to predicate Wal-Mart's direct liability on its failure (a) to protect Mr. Cooper from the injuries occasioned by Deggs's missteps during her purchase of the bicycle, and (b) to provide its customers with a safe passageway through which to exit the store.

Our review of the record reveals that, as with the Coopers' vicarious liability contentions, their direct liability claims are urged in a surreptitious effort to breathe new life into their case by challenging issues that were at best peripheral at trial.  We do not find that the Coopers' arguments with respect to this issue merit a discussion; they are contrived and unfounded under the case law.  Again, we note that they did not raise the issue of direct liability as a means of avoiding dismissal when Wal-Mart sought a j.m.l. at the close of the Coopers' case in chief.

---

of the bicycle.  <u>Ermert</u>, 559 So.2d at 478-79.

15

## III.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is, in all respects affirmed.

AFFIRMED.